## A11A0954. PUCKETTE v. JOHN BAILEY PONTIAC-BUICK-GMC TRUCK, INC.

(714 SE2d 750)

ANDREWS, Judge.

On appeal from the entry of judgment on a jury verdict in his favor concerning his claims for breach of contract against John Bailey Pontiac-Buick-GMC Truck, Inc. ("Bailey"), Bryan Puckette argues that the trial court erred when it granted Bailey's motion for directed verdict as to his claims for punitive damages and attorney fees. We find no error and affirm.

"The jury is the final arbiter of the facts, and the verdict must be construed by the trial and appellate courts in the light most favorable to upholding the jury verdict." (Citation and punctuation omitted.) *Wilmock, Inc. v. French*, 185 Ga. App. 259, 261 (1) (363 SE2d 789) (1987). In order to prevail on a motion for directed verdict, however, the movant must show that "there is no conflict in the evidence as to any material issue" and that the evidence introduced, "with all reasonable deductions therefrom," demanded the verdict sought. *South Fulton Medical Center v. Poe*, 224 Ga. App. 107, 108 (1) (480 SE2d 40) (1996); see also OCGA § 9-11-50 (a).

So viewed, the record shows that in October 2005, Puckette brought in his 2003 GMC truck to Bailey for repairs. During a serviceman's test drive of the truck, a deer ran out from the side of the road and into the truck, resulting in substantial damage to the right side of the truck and additional damage on the hood and left side. Puckette wanted to trade in the truck for a new one, but the parties could not agree on its value. Puckette wanted a Blue Book retail price of between $21,000 and $22,000, but Bailey offered only $13,000 — $3,000 less than the Blue Book trade-in price. The serviceman obtained a repair estimate concerning the right-side damage from a subcontractor in the amount of $1,783.61. Puckette refused this offer and did not pick up the truck, which remained driveable.

On December 29, Bailey wrote Puckette that it was willing to fix the damage on the truck's right side and to pay for a four-day rental, but that the company needed to know his intentions by January 6, 2006, in order to avoid imposing storage charges of $10 a day. Puckette did not respond to this letter. Instead, he waited until March 20 to retrieve the truck, taking it to another dealer for repairs. Puckette testified that the truck had been missing from the lot at times during October and that 242 miles had been put on it from the time he brought it in. Puckette also testified, however, that he had gone onto the lot to remove the truck's license plate at some point during November.

Puckette's insurer covered the second dealer's repairs to the right side of the car in the amount of $2,836.62 but refused to cover the damage to the hood and left side of the truck. In the months that followed, Puckette returned three more times to Bailey, which fixed some but not all of the problems Puckette had identified, including clicking noises in the dash, groans from the transmission, malfunctioning door speakers, a protruding spring in the driver's seat, and a broken fuel gauge. As Puckette sought to resolve these problems, he rented a car from his sister at the agreed price of $75 per day, with his total rental bill apparently amounting to approximately $13,000.

Puckette later sued Bailey for breach of contract and warranty, negligence, fraud, bailment, and conversion. Puckette later withdrew the fraud claim. Puckette's counsel testified as to his hourly rate, its reasonableness, and the total hours billed on the case, but did not provide an itemized statement of his fees and expenses. At the conclusion of Puckette's evidence, Bailey moved for a directed verdict. The trial court heard argument on the motion and granted it as to punitive damages and attorney fees, but authorized Puckette to present rebuttal evidence. Puckette's counsel stated that he would offer rebuttal evidence only as to "what [the trial court had] left me in the case," and later introduced rebuttal evidence concerning the failed trade-in. When Bailey renewed its motion for directed verdict, the trial court confirmed its earlier ruling.

The jury found in Bailey's favor on Puckette's conversion claim, but awarded Puckette $11,502.60 as to his remaining claims for breach of contract and warranty, negligence, and bailment.

1. Puckette first argues that the trial court erred in granting Bailey's motion for directed verdict before the evidence was closed. As OCGA § 9-11-50 (a) provides, however, a motion for directed verdict may be made at the close of an opponent's evidence. Given that Puckette failed to proffer additional evidence on the question of attorney fees and that the trial court confirmed its original ruling after he had been given an opportunity to present rebuttal evidence, Puckette cannot show that he was harmed by any of the trial court's

rulings. See *Johns v. State*, 253 Ga. App. 207, 209 (558 SE2d 426) (2001) (error alleged to have arisen from exclusion of testimony required a proffer to preserve the issue for appellate review).

2. Although parties to a contract are generally responsible for their own attorney fees, OCGA § 13-6-11 allows for recovery of such fees only where there is "bad faith" in the underlying transaction, or where a party has been "stubbornly litigious" prior to the filing of the action so as to cause "unnecessary trouble and expense." Id.; *Chong v. Reebaa Constr. Co.*, 292 Ga. App. 750 (665 SE2d 435) (2008) (OCGA § 13-6-11 does not apply to conduct in defending the litigation). "Attorney fees are not authorized under OCGA § 13-6-11 if the evidence shows that a genuine dispute exists — whether of law or fact, on liability or amount of damages, or on any comparable issue." (Punctuation omitted.) *M & H Constr. Co. v. North Fulton Dev. Corp.*, 238 Ga. App. 713, 714 (1) (519 SE2d 287) (1999).

Here, Puckette withdrew his fraud claim, and the jury rejected his conversion claim. "Mere failure to pay a just debt is insufficient to support an award of attorney fees under OCGA § 13-6-11." *M & H Constr.*, 238 Ga. App. at 715 (1). The evidence was also conflicting as to the extent of the damage caused by the collision with the deer. Although Puckette testified that the collision caused damage to the hood and left side of the truck as well as its right side, his photographs purporting to prove this were taken years after the event, and a serviceman testified that the flaws on the hood and left side were so small as to be visible only at very close range. It follows that Bailey's failures to repair Puckette's truck to his satisfaction or to agree on a trade-in price could not have justified the submission of attorney fees to this jury. Id. (affirming trial court's grant of motion for j.n.o.v. concerning fees where the only issue upon which damages were awarded was a contract claim).

3. As Puckette correctly points out, the trial court erred in stating that punitive damages could be awarded only if Bailey had acted in bad faith. As Puckette concedes, however, punitive damages may not be recovered for breach of contract, and even gross negligence is inadequate to support a punitive damages award. This record does not raise a reasonable issue as to whether Bailey's acts amounted to "clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." OCGA § 51-12-5.1 (b). It follows that the trial court did not err when it granted a directed verdict as to punitive damages. *Howard v. Alamo Corp.*, 216 Ga. App. 525 (455 SE2d 308) (1995) (affirming grant of summary judgment on punitive damages where no evidence supported a finding that a hotel committed willful or wanton misconduct).

*Judgment affirmed. Phipps, P. J., and McFadden, J., concur.*

DECIDED JULY 25, 2011.

*Clifford H. Hardwick*, for appellant.
*Drew, Eckl & Farnham, Douglas G. Smith, Jr.*, for appellee.